# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| CASSANDRA K. HEDDEN, | } |
| Plaintiff, | } |
| v. | } Case No.: 5:11-CV -1337-RDP |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Cassandra K. Hedden ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. *See* 42 U.S.C. § 405(g). Pursuant to the court's review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision is due to be affirmed.

## I.     Proceedings Below

Plaintiff filed her application for Title II Social Security disability and DIB dated January 23, 2007, alleging an onset date of September 1, 2004. (Tr. 91-97). Plaintiff's date last insured ("DLI") expired on September 30, 2006. (Tr. 25). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration on March 7, 2007. (Tr. 75-81). Following these denials, Plaintiff timely requested and appeared at a hearing before an Administrative Law Judge ("ALJ") on February 9, 2009. (Tr. 32-74).

At the time of the hearing, Plaintiff was 38 years old and had obtained her GED and had attended at least one year of college. (Tr. 43, 75). Her previous work experience included semi skilled to skilled light work as a hair stylist, waitress, and cake decorator. (Tr. 116, 133). Plaintiff alleges that she suffers from a broken left leg incurred after being thrown from a horse in 2000, which causes unsteadiness on her feet and requires her to elevate her leg frequently throughout the day to reduce the swelling and pain . (Tr. 53-60). Plaintiff claims that this impairment prevents her from walking more than 50-80 yards. (Tr. 58). Plaintiff also asserts that she suffers from degenerative disk disease, spinal stenosis, and depression.  (Tr. 51-53, 62-68).

Plaintiff's medical records reveal she fractured her tibia and fibula in February 2000 requiring open reduction internal fixation. (Tr. 156-62). In his last progress report on March 28, 2000, Dr. Ray A. Fambrough noted that Plaintiff was doing "very well" with "minimal swelling" in her leg and suggested she continue her exercises to help with spasms in her calf muscles. (Tr. 160). Plaintiff's other medical records from 1998, 2001, 2003, and 2006 reveal doctor and emergency room visits for purposes unrelated to any of the alleged impairments in this case, such as OB/GYN visits, a sore throat, a hematology report, and a minor injury on her right foot after dropping a VCR or DVD player on it. (Tr. 154, 195-216).

On June 24, 2004, Plaintiff was admitted overnight to Huntsville Hospital for psychiatric reasons. (Tr. 163-73). In the screening form, examining physicians reported that Plaintiff claimed to be having suicidal ideations, but otherwise had no homicidal ideations, her "thought process is clear and coherent," and no psychosis was noted. (Tr. 169-71). Since then, Plaintiff has denied that she was having suicidal thoughts at that time. (Tr. 51).

After her date last insured expired on September 30, 2006, Plaintiff received further treatment for her impairments from Dr. Celia Lloyd-Turney.[1] (Tr. 218-30). On August, 28, 2008, Dr. Lloyd-Turney assessed Plaintiff's residual functional capacity ("RFC") to be extremely restrictive, stating that Plaintiff could occasionally only lift/carry five pounds; could never push/pull with the upper/lower extremities, climb, balance, or crawl; could occasionally stoop, kneel, crouch, reach, handle, finger or feel; should never be exposed to environmental hazards; could rarely drive a car; and suffered from incapacitating levels of pain. (Tr. 227-30). On January 12, 2009, Dr. Lloyd-Turney provided a medical source opinion as to Plaintiff's mental functioning finding "Marked" limitations in all work-related functions and concluded Plaintiff is unable to work due to pain and depression related to pain. (Tr. 243-44).

Plaintiff testified at the ALJ hearing on February 9, 2009, and was represented by James Izzo. A Vocational Expert ("VE"), Betsy Gramlet, also testified at the hearing. (Tr. 32). The VE properly classified Plaintiff's past relevant work, and answered in response to Plaintiff's attorney that a person with a pain level of 7-8 on a scale of 1-10 would not be able to perform Plaintiff's past relevant work. (Tr. 48-50, 73).

In the ALJ's decision dated March 3, 2009, he determined that Plaintiff has the medically determinable impairment ("MDI") of a history of a fractured tibia and fibula, but her MDI does not equal a severe impairment or combination of impairments since it did not prevent her from working for 12 consecutive months. (Tr. 22); *see* 20 C.F.R. § 404.1521. Accordingly, the ALJ concluded that

---

[1] Both parties used multiple spellings of Dr. Lloyd-Turney's name, but the court performed a search of her name on Google, which indicated this spelling.

Plaintiff was not disabled prior to September 30, 2006, her DLI, and thus ineligible for DIB. (Tr. 25). On February 18, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. (Tr. 1-3); *see* 42 U.S.C. § 405(g).

## II.  ALJ Decision

Disability under the Act is determined under a five-step analysis. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.

Before proceeding to steps four and five, the ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In

the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. 404.1520(f). If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In this case, the ALJ determined that Plaintiff: (1) has not engaged in substantial gainful activity since the onset of her alleged disability on September 1, 2004 (Tr. 22), but (2) does not have a severe impairment or combination of impairments since the "medical record does not show that she had any significant limitations at any time from" the date of her alleged disability onset on September 1, 2004, through her DLI on September 30, 2006. (Tr. 24). Because the ALJ determined that Plaintiff does not have a severe impairment under prong two of the five-step analysis, he deemed it unnecessary to proceed further in the analysis and thus concluded that Plaintiff was not disabled as of the DLI, and therefore not entitled to a period of disability or DIB. (Tr. 25).

### III.  Plaintiff's Argument

Plaintiff requests that the ALJ's decision be reversed and benefits awarded, or in the alternative, that the case be remanded under sentence four for further proceedings, including a review of the record by a Medical Expert ("ME") and for reevaluation of Plaintiff's RFC prior to her DLI

with VE testimony as warranted. (Pl.'s Mem. 11). Plaintiff's primary argument is that the ALJ erred in failing to utilize the services of a medical expert. (Pl.'s Mem. 5). More specifically, Plaintiff alleges that a new RFC should be developed for the relevant time period in light of the opinion and findings of treating physician Dr. Lloyd-Turney, who Plaintiff also asserts was improperly discredited by the ALJ. (Pl.'s Mem. 5-6). Plaintiff also contends that the ALJ should have recontacted Dr. Lloyd-Turney for clarification of her opinion as to Plaintiff's onset date of disability. (Pl.'s Mem. 10).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

**V.     Discussion — Substantial Evidence Supports the ALJ's Decision That Plaintiff Was Not Disabled Prior to Her DLI**

Plaintiff argues that the ALJ failed in his duty to develop the record by not ordering a new consultative examination to determine her RFC for the relevant period. (Pl.'s Mem. 3). However, it is well settled that the burden is on a claimant to prove her case – not the ALJ to prove for her or act as her counsel. *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1512(a), (c) (2012); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). The current regulations also require that Plaintiff must show that she became disabled prior to the expiration of her disability insured status and that the disability was severe for a continuous period of 12 months. *See* 20 C.F.R. §§ 404.101, 404.130, 404.131, 404.1505(a), 404.1509, 404.1520(a)(4)(ii); *Moore*, 405 F.3d at 1211; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). There must also be "a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). In this case, it is readily apparent that Plaintiff failed to fulfill her burden

since there is no evidence on record for the relevant time period that proves a severe impairment. *See* 20 C.F.R. § 404.1521 ("An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, regardless of age, education, or work experience").

Examining the medical record chronologically, Plaintiff sustained a fracture of her left tibia and fibula in February 2000. (Tr. 156-57). As treatment for the fracture, Plaintiff underwent an open reduction internal fixation and returned to work as a hairstylist until the business failed in 2004. (Tr. 51, 160-62). Plaintiff's last checkup in March 2000, following her surgery, found that she was doing very well, with a well-aligned tibia, minimal swelling, and strength gradually returning to her legs. (Tr. 160). The only other medical treatment Plaintiff received between her alleged onset date of disability, September 1, 2004, and her DLI, September 30, 2006, was for a minor injury to her right foot. (Tr. 198-206). Given that this injury was apparently of no lasting consequence and it was on her right foot rather than her left foot, Plaintiff failed to fulfill her burden of proving a severe impairment fulfilling the duration requirement of 12 months. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c)

Furthermore, the evidence of record leading up to the relevant time period supports the ALJ's determination that Plaintiff was not disabled on or before September 30, 2006. (Tr. 22-25). For example, Plaintiff's checkup in March 2000 indicates that her leg was healing well and noted no complications. (Tr. 160). Accordingly, the Disability Determination Service ("DDS") and the ALJ's determination that Plaintiff did not have a severe impairment during the relevant period is supported

by substantial evidence, thus the ALJ was not obligated to obtain a consultative examination or medical expert opinion pursuant to 20 C.F.R. §§ 404.1519a or 404.1529(b). (Tr. 24, 174-77).

Plaintiff also alleges that the ALJ should have utilized a consultative examination in light of her alleged depression, which could allow an inference as to her onset date prior to her DLI. (Pl.'s Mem. 5-11). However, the evidence of record simply does not support this argument. Prior to her DLI, Plaintiff was admitted to the hospital for psychiatric treatment relating to suicidal thoughts. (Tr. 51, 163-73). Yet Plaintiff was only admitted overnight and the hospital noted that she was oriented with clear and coherent thoughts and no signs of psychosis. (Tr. 163-73). During her hearing, Plaintiff even denied that she was suicidal at that time and attributed it to emotional and physical exhaustion from working the hair salon and raising her children. Plaintiff also did not seek further mental health treatment prior to her DLI. (Tr. 51). All of these factors support the ALJ's conclusion that Plaintiff's alleged depression was not a medically determined impairment during the relevant time period. (Tr. 22). Moreover, even if Plaintiff was medically diagnosed with depression prior to her DLI, a mere diagnosis of a condition does not mean that condition caused limitations amounting to a severe impairment. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Thus, the ALJ was not required to determine an onset date for a person who was not disabled. *See Klawinski v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 772 (11th Cir. 2010) (finding that a medical advisor is only required for determining an onset date *after* a finding of disability).

Plaintiff also asserts that the ALJ erred in discrediting the opinion and treating records of Dr. Lloyd-Turney, who provided a very restrictive assessment of Plaintiff's capacity to perform work-related activities. (Pl.'s Mem. 6-11). Even though Dr. Lloyd-Turney's findings and opinion as a

treating physician would normally be entitled to great weight, *see Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003), the ALJ had good cause for dismissing them since she only treated Plaintiff from April through August 2008, and her mental assessment was rendered in January 2009, roughly two years after Plaintiff's DLI. (Tr. 227-30, 243-48); *Moore*, 405 F.3d at 1211. Accordingly, the ALJ articulated sufficient justification to disregard Dr. Lloyd-Turney's findings and opinion. Simply stated, those findings and opinions are not dispositive of Plaintiff's alleged disability prior to her DLI.

      Plaintiff also argues that the ALJ should have "recontacted Dr. Lloyd-Turney for clarification of her opinion as to onset." (Pl.'s Mem. 10) (citing 20 C.F.R. § 404.1512(e)). This argument deserves some consideration as Dr. Lloyd-Turney's handwriting – like many doctors' – is not entirely legible. (Tr. 244). However, ALJs are not required to recontact medical sources when there is already substantial evidence on record to support a decision. *See* 20 C.F.R. § 404.1512(e); *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010). In this case, the ALJ made a comprehensive review of the relevant record and found that Plaintiff did not demonstrate a severe impairment prior to her DLI. (Tr. 22-25). As previously discussed, there was evidence in the record that Plaintiff's fractured tibia and fibula were on the mend, and that her alleged depression was only a one-night occurrence. (Tr. 160, 163-73). Thus, there was already clear substantial evidence supporting the ALJ's decision and, accordingly, there was no requirement for further clarification through recontacting Dr. Lloyd-Turney.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff's medically diagnosed impairment did not equal a severe impairment prior to her DLI of September 30, 2006 was based on substantial evidence and proper legal standards were applied. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___2nd___ day of July, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE